UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| : | |
| GUS A. ACEVEDO, et al., : | |
| : | CIVIL ACTION NO. 05-5169 (MLC) |
| Plaintiffs, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | **FILED:  FEBRUARY 28, 2006** |
| MONSIGNOR DONOVAN HIGH : | |
| SCHOOL, et al., : | |
| : | |
| Defendants. : | |
| : | |

**COOPER, District Judge**

**APPEARANCES**

Mendel White, Freehold, N.J., for plaintiffs.

Buchanan Ingersoll PC (Caroline J. Berdzik of counsel), Princeton, N.J., for defendants.

The defendants, Monsignor Donovan High School ("MDHS") and Edward Gere ("Gere") (collectively "the defendants") move to dismiss the amended complaint filed by Gus A. Acevedo ("G. Acevedo") and Luane Acevedo ("L. Acevedo") (collectively "the plaintiffs"), for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  The Court, for the reasons stated herein, will (1) grant the part of the motion seeking to dismiss (a) L. Acevedo's loss of consortium claim, and (b) all claims against Gere, and (2) deny the part of the motion seeking to dismiss G. Acevedo's Age Discrimination in Employment Act ("ADEA") claim against MDHS.

<u>BACKGROUND</u>

MDHS employed G. Acevedo as a teacher during the 2003-2004 school year, which commenced on September 5, 2003 (the "school

year"). (Am. Compl., at ¶¶ 4, 7.) Gere was the principal at MDHS during the school year. (Id. at ¶ 5.) G. Acevedo alleges that Gere, on or about March 1, 2004, announced at a MDHS teachers' meeting that it was his goal to reduce the median age of the faculty at MDHS. (Id. at ¶ 6.)

G. Acevedo claims that, on or about May 3, 2004, he was summoned to Gere's office and discharged from his teaching duties without cause and without benefit of the procedures set forth by the Diocese of Trenton, which oversees MDHS. (Id. at ¶ 8.) G. Acevedo alleges that MDHS replaced him with a younger person. (Id. at ¶ 9.) At the time of his discharge, G. Acevedo was fifty-five years old. (Id. at ¶ 3.)

The plaintiffs brought this action against the defendants for, inter alia, violating the ADEA, on October 28, 2005.[1] (Id. at ¶ 10.) G. Acevedo contends that he was "perform[ing] his duties as a teacher [at MDHS] in an appropriate and satisfactory manner during the time of his employment at [MDHS] for many years and including the academic year 2003 to 2004." (Id. at ¶ 7.)

---

[1] The plaintiffs' original complaint did not include a notice of the right to sue from the Equal Employment Opportunity Commission ("EEOC"). Therefore, the Court, on October 31, 2005, ordered the plaintiffs to submit (1) a copy of the charge sent to the appropriate agency, (2) proof of exhaustion of administrative remedies, and (3) proof of notice of the right to sue. (10-31-05 Ord., at 2.) The plaintiffs, on November 17, 2005, provided the Court with a right-to-sue notice from the EEOC, which was dated November 15, 2005 ("11-15-05 Notice"). (Dkt. entry no. 3.) On that same date, the plaintiffs filed an amended complaint, which included the 11-15-05 Notice. (Am. Compl., at 4.)

Therefore, G. Acevedo claims that MDHS willfully violated the ADEA by (1) terminating his employment "without cause," and (2) replacing him with a younger person.  (Id. at ¶¶ 8-10.)

G. Acevedo alleges that the defendants' actions (1) deprived him of "pension rights to which he would have otherwise been entitled if continued in the employ of [MDHS]," and (2) caused him "humiliation, anxiety, emotional distress, [and] pain and suffering."  (Id. at ¶ 12.)  L. Acevedo also asserts a loss of consortium claim against the defendants.  (Id. at 3.)

The defendants now move to dismiss G. Acevedo's ADEA claim arguing that (1) he failed to set forth a prima facie case of age discrimination under the ADEA, and (2) the ADEA does not provide for individual liability as to Gere.  (Defs. Br., at 1.)  Also, the defendants move to dismiss L. Acevedo's loss of consortium claim, arguing that a loss of consortium claim is not viable if based on an underlying claim of discrimination.  (Id.)  The Court will address each of these arguments in turn.

## DISCUSSION

## I.  Standard of Review for 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.  Doe v. Delie, 257 F.3d

3

309, 313 (3d Cir. 2001).  "Dismissal of claims under Rule
12(b)(6) is appropriate only if it appears beyond doubt that the
plaintiff can prove no set of facts in support of [the] claim
upon which relief may be granted."  Jakomas v. McFalls, 229
F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may
generally not "consider matters extraneous to the pleadings."  In
re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d
Cir. 1997).  However, if the Court exercises discretion and
permits a party to present matters outside the pleadings, the
Court must (1) convert the motion to dismiss into one for summary
judgment, and (2) allow the parties a reasonable opportunity to
present all material pertinent to such a motion under Rule 56.
Fed.R.Civ.P. 12(b).  An exception to this general rule is that
the Court may consider (1) exhibits attached to the complaint,
(2) matters of public record, and (3) all documents that are
integral to or explicitly relied upon in the complaint without
converting the motion to dismiss into one for summary judgment.[2]
Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir.
2004) (citation omitted).

---

[2] "The rationale underlying this exception is that the
primary problem raised by considering documents outside the
complaint — lack of notice to the plaintiff — is dissipated where
the plaintiff has actual notice and has relied upon the documents
in framing the complaint."  Jones v. Intelli-Check, Inc., 274
F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).

The defendants, moving to dismiss under Rule 12(b)(6), rely on materials beyond the allegations of the amended complaint, including filings and correspondence relating to G. Acevedo's administrative proceedings, a declaration from the defendants' counsel, Caroline J. Berdzik, Esq., with attached exhibits, and an affidavit signed by Gere.  (See Defs. Br.; Berdzik Decl. & Exs.; Defs. Reply Br.; Gere Aff.)[3]  The plaintiffs contend that if the Court considers these materials that we should convert the defendants' motion to dismiss into one for summary judgment. (Pls. Br., at 1-2.)[4]

The Court will, in addition to the amended complaint and the briefs submitted by the parties, consider only the following document submitted by the defendants, which is integral to or explicitly relied upon in the plaintiffs' pleading: G. Acevedo's 10-29-04 Charge.  (Berdzik Decl., at Ex. A.)  The other materials

_____

[3] These materials provided by the defendants include, inter alia (1) G. Acevedo's 10-29-04 Charge of Discrimination ("Charge") with the New Jersey Division on Civil Rights ("NJDCR") & EEOC; (2) MDHS's 02-23-05 answer to Charge; (3) 05-02-05 NJDCR letter; (4) MDHS's chart of the ages of its faculty and staff as of May 2005; (5) 07-06-05 letter from the plaintiffs' counsel, Mendel White, Esq., to NJDCR; (6) 07-29-05 NJDCR letter to MDHS; (7) 02-23-04 & 03-23-04 written warnings from MDHS to G. Acevedo; (8) notes from various meetings in 2004 regarding G. Acevedo; (9) 04-28-04 e-mail from a parent of a student in G. Acevedo's class to MDHS; (10) 05-03-05 signed document from G. Acevedo that he "cho[]se not to return to teach at [MDHS]"; and (11) 12-22-05 MDHS profile of replacement Spanish teacher, Barbara Cedeno. (Berdzik Decl., at Exs. A-K.)

[4] The plaintiffs included an affidavit from G. Acevedo to their opposition brief.  The Court, for the reasons discussed below, will not consider this affidavit in resolving the motion.

submitted by the defendants are neither relied upon by the plaintiffs, nor integral to the amended complaint.  Documentation such as (1) warnings MDHS provided to G. Acevedo, (2) e-mails or correspondence from parents, (3) G. Acevedo's alleged "resignation letter", or (4) MDHS statistics regarding the ages of its teachers and staff are evidence outside the amended complaint, and the Court will not consider such documentation on a motion to dismiss.[5]

## II.  Legal Sufficiency of G. Acevedo's ADEA Claim

The ADEA prohibits discrimination by employers on the basis of age.  29 U.S.C. § ("Section") 623(a)(1).  To establish a prima facie case of age discrimination under the ADEA, G. Acevedo must demonstrate that (1) he was over forty years old at the time he was discharged; (2) he was qualified for the position from which he was discharged and performing same in a satisfactory manner; (3) his employment was discharged despite his qualifications and performance; and (4) his employer ultimately filled the position with a person sufficiently younger to permit an inference of age discrimination.  Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 331 (3d Cir. 2000); Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1214 (3d Cir. 1988).  The defendants contend that G. Acevedo has

---

[5] The defendants request that if the Court found "that information submitted in support of [their] motion is not within the scope of a motion to dismiss, . . . the Court [should] disregard this information in reaching its decision to avoid [converting] this motion into a motion for summary judgment." (Defs. Reply Br., at 2 n.3.)

failed to establish a prima facie case because he cannot show that he was (1) performing his job duties in a satisfactory manner, (2) discharged, or (3) replaced with someone "sufficiently younger". (Defs. Br., at 5-6; Defs. Reply Br., at 2-3.)

The defendants argue that — as indicated in the warnings MDHS allegedly provided to G. Acevedo — he was not performing his job duties in a satisfactory manner. (Defs. Br., at 5.) Also, the defendants contend that MDHS did not discharge G. Acevedo; ratjer, they provided him with the opportunity to resign, and he did so. (Id.; Gere Aff., at ¶ 2.) Moreover, the defendants allege that G. Acevedo's position was ultimately not filled with someone sufficiently younger. Therefore, the defendants assert that G. Acevedo has failed to state a viable cause of action under the ADEA.

G. Acevedo has set forth a prima facie case of age discrimination under the ADEA. In the amended complaint, G. Acevedo alleges that (1) MDHS employed him as a teacher, (2) he was "over the age of forty years having been born on December 2, 1948," (3) he was performing his duties as a teacher in an appropriate and satisfactory manner, (4) MDHS discharged him on May 3, 2004, and (5) his duties were taken over by a younger person. (Am. Compl., at 1, 2.) Taking all of the above allegations as true for purposes of this motion, G. Acevedo has set forth a prima facie case under the ADEA.

All of the defendants' arguments in support of their motion attack the sufficiency or the factual accuracy of G. Acevedo's allegations in the amended complaint.  These are improper arguments to support a motion to dismiss under Rule 12(b)(6). First, the defendants cannot contest the factual accuracy of G. Acevedo's allegations because, for the purposes of this motion, the Court must accept as true all of G. Acevedo's factual allegations.  Doe, 257 F.3d at 313.  Second, concerning the defendants' arguments about the sufficiency of G. Acevedo's factual allegations, the notice pleading standard of Rule 8(a) requires that a complaint provide only a short and plain statement showing a right to relief, "not a detailed recitation of the proof that will in the end establish such a right."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 564 (3d Cir. 2002); see Weston v. Pa., 251 F.3d 420, 429 (3d Cir. 2001) (explaining that a complaint need not plead law or match facts to every element of a legal theory to survive a motion to dismiss under Rule 12(b)(6)).  Furthermore, complaints in employment discrimination cases must satisfy only the simple requirements of Rule 8(a).  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (holding that "an employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] and instead must contain only 'a

short and plain statement of the claim showing that the pleader is entitled to relief'").

"Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits." Id. at 515. Instead, the simplified notice-pleading standard of Rule 8(a) "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 512 (citations omitted). Here, as illustrated above, the amended complaint provides sufficient allegations to satisfy each of the elements of an age discrimination claim under the ADEA.

G. Acevedo first alleges, and the defendants do not dispute, that he was in the protected class — over forty years old — at the time of his alleged discharge.[6] (Am. Compl., at ¶ 3.) Also, G. Acevedo claims that he was performing his job as a teacher at MDHS in "an appropriate and satisfactory manner" before MDHS discharged him. (Am. Compl., at ¶ 7.) This allegation is sufficient to satisfy the second prima facie element. The defendants argue that the warnings G. Acevedo received demonstrate that he was not performing his job duties in a satisfactory manner. However, the Court has already excluded the

---

[6] Although G. Acevedo does not provide his specific age at the time of discharge, the Court reasonably infers from his date of birth — as alleged in the amended complaint — that he was fifty-five years old at the time of his discharge.

9

warnings from consideration in deciding this motion because they are not relied upon by the plaintiffs, nor are they integral to the amended complaint.  The defendants make no other arguments attacking the legal sufficiency of G. Acevedo's allegations concerning the second prima facie element.

G. Acevedo alleges further that the defendants discharged him on May 3, 2004.  (Am. Compl., at ¶ 8.)  This allegation is sufficient to satisfy the third prima facie element.  The defendants contend that G. Acevedo cannot establish this element because he allegedly resigned and was not discharged.  The defendants support their argument with (1) a document which allegedly represents a resignation letter signed by G. Acevedo, and (2) Gere's statement that G. Acevedo resigned.  However, the Court has already excluded these documents from consideration, and the Court need not resolve the factual issue of whether G. Acevedo resigned or the defendants discharged him in deciding this motion.  Instead, the Court need only examine the sufficiency of G. Acevedo's allegations, which, as explained above, are sufficient to satisfy the third prima facie element.

G. Acevedo alleges that he was replaced by someone younger. (Am. Compl., at ¶ 9.)  Also, he contends that his replacement was not qualified and related to someone in MDHS's administration. (Id.)  The Court finds that G. Acevedo's allegations are sufficient to satisfy the fourth prima facie element.

10

The defendants argue that G. Acevedo cannot demonstrate that they replaced him with someone "sufficiently younger" by pointing out that they temporarily replaced him — until the close of the school year — with "Assistant Principal Eileen McCullion's college age son[, Tim McCullion], who was majoring in Spanish and was substitute teaching at MDHS." (Defs. Br., at 6; Gere Aff., at ¶¶ 3-5.)  The defendants state further that they hired Barbara Cedeno, forty-six years old, to replace G. Acevedo for the 2004-2005 school year.  (Defs. Br., at 6; Gere Aff., at ¶ 6.)  The defendants' contentions suffer from the same flaw as their previous arguments, i.e., all of their arguments relate to the factual accuracy (or lack thereof) of the allegations in the amended complaint.

The defendants also apparently argue that G. Acevedo cannot establish the "sufficiently younger" element because his permanent replacement was forty-six years old — nine years younger than G. Acevedo — at the time of her hire.  Even if the Court had accepted, and therefore considered, the defendants' submissions regarding the circumstances involving MDHS finding a replacement for G. Acevedo and the ages of his apparent replacement(s), their argument is deficient on its face to support their motion.

A plaintiff — to satisfy the "sufficiently younger" standard — does not have to show a "particular age difference." Showalter v. Univ. of Pitt. Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999)

11

(citation omitted); see O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (explaining that "there can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old"). Also, although "[d]ifferent courts have held . . . that a five year difference can be sufficient, . . a one year difference cannot." Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (holding that "sufficiently younger" standard satisfied where plaintiff was replaced by two individuals — one who was four years younger than plaintiff and the other who was ten years younger); see Showalter, 190 F.3d at 236 (concluding that plaintiff satisfied "sufficiently younger" standard by showing replacements were eight years younger and sixteen years younger than plaintiff).[7]  In other words, "[t]here is no magical

---

[7] See also Kehres v. Kline, 132 Fed.Appx. 992, 994 (3d Cir. 2005) (finding one to two year age difference between replacement and plaintiff insufficient to create inference of age discrimination); Coffman v. Abington Mem'l Hosp., No. 02-2192, 2003 WL 21464572, at *4 (E.D. Pa. June 24, 2003) (concluding six year age difference insufficient as matter of law to permit inference of age discrimination); Martin v. Healthcare Bus. Res., No. 00-3244, 2002 WL 467749, at *5 n.7 (E.D. Pa. Mar. 26, 2002) ("For purposes of a prima facie ADEA case, the fourth element contemplates an age difference of at least five years."); Gutknecht v. SmithKline Beecham Clinical Labs., 950 F.Supp. 667, 672 (E.D. Pa. 1996) ("Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made.").

formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination." Barber v. CSX Distribution Servs., 68 F.3d 694, 699 (3d Cir. 1995).

The Court, following the liberal pleading requirements of Rule 8(a), finds that G. Acevedo has alleged sufficient facts in the amended complaint to set forth a prima facie case of age discrimination under the ADEA. The defendants' arguments in support of their motion to dismiss are more appropriate for a motion for summary judgment after the parties have engaged in discovery. Accordingly, the Court will deny the defendants' motion to dismiss G. Acevedo's ADEA claim insofar as the motion claims that G. Acevedo has failed to set forth a prima facie case of age discrimination under the ADEA.

### III. Gere's Individual Liability

G. Acevedo has also asserted an ADEA claim against Gere. The defendants contend the Court should dismiss G. Acevedo's ADEA claim against Gere because the ADEA does not provide for individual liability.

The ADEA makes it unlawful for an "employer" to discriminate on the basis of age. 29 U.S.C. § 623(a). The ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding

13

calendar year . . . [or] any agent of such a person . . .."  29
U.S.C. § 630(b).  Unless an individual qualifies as a plaintiff's
"employer" as defined above, the ADEA does not provide for
individual liability.  See Holocheck v. Luzerne County Head
Start, 385 F.Supp.2d 491, 496 (M.D. Pa. 2005) (dismissing ADEA
claim against manager of business because, inter alia,
definitions of "employer" under Title VII and ADEA are virtually
identical and Third Circuit has held no individual liability
available under Title VII); McDowell v. Axsys Techs. Corp., No.
03-2488, 2005 WL 1229863, at *4 (D.N.J. May 24, 2005) (stating
same and dismissing ADEA claim against supervisor); Verdecchia v.
Douglas A. Prozan, Inc., 274 F.Supp.2d 712, 723 (W.D. Pa. 2003);
Horvath v. Rimtec Corp., 102 F.Supp.2d 219, 227-28 (D.N.J. 2000);
Cohen v. Temple Phys., 11 F.Supp.2d 733, 736 (E.D. Pa. 1998).[8]

To the extent that G. Acevedo seeks to impose individual
liability on Gere as principal of MDHS for his alleged unlawful
termination, Gere cannot be held liable under the ADEA.
Therefore, the Court will dismiss Count I of the amended
complaint against Gere in his individual capacity.

---

[8] See also Ardalan v. Monterey Inst. of Int'l Studies, 141
Fed.Appx. 536, 537 (9th Cir. 2005); Medina v. Ramsey Steel Co.,
238 F.3d 674, 686 (5th Cir. 2001); Mason v. Stallings, 82 F.3d
1007, 1009 (11th Cir. 1996); Birkbeck v. Marvel Lighting Corp.,
30 F.3d 507, 510-11 (4th Cir. 1994).

G. Acevedo apparently does not dispute that Gere cannot be held liable under the ADEA in his individual capacity.  Rather, he claims that, as a "participant in the decision making process that formed the basis for the discrimination," Gere could be held liable in his "official capacity" as principal of MDHS.[9]  (Pls. Br., at 3).  For the reasons discussed below, the Court finds that G. Acevedo cannot maintain an ADEA claim against Gere in his official capacity.

The ADEA does not permit official-capacity claims against non-employer individuals.  See Seres v. Liberty Chevrolet, No 98-5999, 1999 WL 11779, at *1 (S.D.N.Y. Jan. 12, 1999) (dismissing Title VII and ADEA official-capacity claims and remarking that there was no evidence that Congress intended to permit suits against individuals in their official capacity).[10]  G. Acevedo's reliance on Crawford v. West Jersey Health Systems, 847 F.Supp.

---

[9] The amended complaint does not designate whether G. Acevedo is suing Gere in his individual or in his official capacity.

[10] See, e.g., Cooper v. Morgenthau, No. 99-11946, 2001 WL 868003 (S.D.N.Y. July 31, 2001) (collecting cases and dismissing Title VII and ADEA claims against New York County District Attorney and Director of Personnel for District Attorney's Office in their individual and official capacities); Pembrick v. Stracher, 67 F.Supp.2d 149, 168 & n.15 (E.D.N.Y. 1999) (dismissing Title VII and ADEA claims against university personnel in their official capacities).  But see Leykis v. NYP Holdings, 899 F.Supp. 986, 991 (E.D.N.Y. 1995) (concluding individuals could be sued in their official capacity under ADEA).

1232 (D.N.J. 1994), to support his argument that the ADEA permits official-capacity suits against individuals, is misplaced.[11]

In Crawford, the court addressed the issue of whether "the liability of an employer's agent under [the] ADEA and Title VII is limited to his official capacity, or extends to him as an individual." Id. at 1236. The Crawford court found that the ADEA and Title VII did not provide for individual liability, but allowed the plaintiff's claims against the individual defendant in his official capacity to continue. Id. at 1237. However, later decisions by district courts in this circuit have found "no basis for [distinguishing] between 'official' and 'individual' suits in the statutory language of Title VII." Schanzer v. Rutgers Univ., 934 F.Supp. 669, 678 n.12 (D.N.J. 1996); Cardoza v. Merion Cricket Club, No. 95-4055, 1996 WL 653397, at *5 n.8

---

[11] G. Acevedo also cites to Horvath v. Rimtec Corp., 102 F.Supp.2d 219 (D.N.J. 2000) in support his argument. However, Horvath is inapposite. First, G. Acevedo relies on Horvath for its application of the New Jersey Law Against Discrimination ("NJLAD") to an individual defendant. The NJLAD is not at issue in this case. Second, the Horvath court did not decide whether a defendant may be held liable under the NJLAD (or the ADEA) in that person's official capacity. Instead, the court addressed a defendant's individual-capacity liability under the NJLAD. Id. at 228. Finally, unlike Title VII or the ADEA, the NJLAD provides for individual liability for a supervisory employee who is not an "employer" if said employee is involved in "aiding or abetting" an employer's discriminatory conduct pursuant to N.J.S.A. § 10:5-12(e). Id.

(E.D. Pa. May 2, 1996); <u>Behrens v. Rutgers Univ.</u>, No. 94-0358, 1996 WL 570989, at *8 n.10 (D.N.J. Mar. 29, 1996).[12]

These courts, in rejecting the individual capacity/official capacity dichotomy, explained that "[a] suit against a supervisory employee in her official capacity is a suit against the individual in name only; it operates in all respects as a suit against the employer."  <u>E.g.</u>, <u>Schanzer</u>, 934 F.Supp. at 678 n.12; <u>cf.</u> <u>Foxworth v. Pa. St. Police</u>, No. 03-6795, 2005 WL 840374, at *5 (E.D. Pa. Apr. 11, 2005) (explaining, in Title VII case against a public employer and employees, that "there is complete symmetry between a governmental agency as a defendant and the officers who hold positions in that governmental entity in their official capacities").[13]  "If the defendant is not [the] plaintiff's

---

[12] <u>See also</u> <u>Ackel v. Nat'l Commc'ns, Inc.</u>, 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities.").  "The proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer <u>or</u> by naming the employer directly." <u>Sauers v. Salt Lake County</u>, 1 F.3d 1122, 1125 (10th Cir. 1993) (emphasis added); <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991).  The Court notes that despite this explanation, the <u>Sauers</u> and <u>Busby</u> courts concluded that a Title VII suit against a plaintiff's supervisor could proceed against the supervisor in his or her official capacity.

[13] <u>See also</u> <u>Clarke v. Whitney</u>, 907 F.Supp. 893, 895 (E.D. Pa. 1995) ("[A] suit against a defendant in his or her official capacity is simply another way to sue the defendant's employing entity."); <u>Bishop v. Okidata, Inc.</u>, 864 F.Supp. 416, 423 (D.N.J. 1994) (rejecting distinction in context of ADA case); <u>Doe v. William Shapiro, Esq., P.C.</u>, 852 F.Supp. 1246, 1252-53 (E.D. Pa. 1994) (discussing distinction in Title VII and ADA case; noting official capacity suits originated from "color of law" requirement in 42 U.S.C. § 1983 cases; and holding dichotomy was "a distinction without a basis in the law").

employer, . . . it is irrelevant whether that person was acting
in an official or individual capacity, for a Title VII suit may
not be properly maintained against the individual." Schanzer,
934 F.Supp. at 678 n.12.  As such, "[t]he relevant threshold
question is not whether the defendant acted in an official
capacity, but whether the defendant is the plaintiff's employer
under the statute."[14] Id.

Gere is not G. Acevedo's "employer" under the ADEA, nor has
G. Acevedo alleged as much.  G. Acevedo has named his employer,

---

[14] The rationale in previously permitting suits to continue
against individual defendants in their official capacities after
dismissing them in their individual capacities was, "in effect,
to maintain the suit against that party for purposes of
discovery." E.g., Schanzer, 934 F.Supp. at 678 n.12 (citing Cook
v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 n.2 (2d Cir.
1995)).  Moreover,

> official capacity suits have traditionally been
> permitted to avoid Eleventh Amendment and sovereign
> immunity problems that might arise if a plaintiff were
> to sue a government entity directly. . . . [B]ecause
> employers are subject to suit under Title VII, [t]here
> is no need for such official capacity litigation. . . .
> [T]he function of courts is to provide a remedy against
> those that Congress has determined should be held
> liable for the plaintiff's damages, not to affix moral
> blame. . . . If Congress has made a determination that
> individual employees should not be personally liable
> for acts of discrimination, it is not for the courts to
> second guess that judgment and provide some type of
> moral sanction against those who engaged in prohibited
> conduct. . . . [A] defendant bears financial and
> emotional expenses in civil litigation and a court
> should force a person to bear those costs only if the
> end of that litigation may result in an award of
> damages against that person.

Gray v. Shearson Lehman Bros., Inc., 947 F.Supp. 132, 136 (S.D.N.Y.
1996) (internal quotations and citations omitted) (Title VII case).

MDHS, as a defendant in this action.  Thus, the Court will not allow G. Acevedo's claim against Gere in his official capacity to continue.  Moreover, because (1) G. Acevedo has designated his actual "employer" as a defendant, and (2) the Court has already found that he has set forth a prima facie case under the ADEA against MDHS sufficient to withstand a motion to dismiss, he suffers no prejudice by the Court dismissing his official-capacity claim against Gere.  See, e.g., Clarke, 907 F.Supp. at 895 (concluding that because the plaintiff's former employer "is already a defendant to this action, there is no loss to [the plaintiff]" if the court dismisses official-capacity claim against individual defendant); see also Foxworth, 2005 WL 840374, at *4 (explaining that plaintiff pursuing claims against employer and individual defendant in individual's official capacity "would be redundant").  Accordingly, the Court will also dismiss Count I insofar as G. Acevedo asserts a claim against Gere in his official capacity as principal of MDHS.

## IV.  L. Acevedo's Loss of Consortium Claim

L. Acevedo has brought a loss of consortium claim against the defendants.  (Am. Compl., at 3.)  The defendants contend that L. Acevedo, as a claimant's spouse, "cannot recover damages for loss of consortium in a discrimination action brought pursuant to the ADEA."  (Defs. Br., at 4.)  The plaintiffs do not argue that L. Acevedo's claim is a permissible ancillary claim to her

husband's ADEA claim.  Instead, they contend that the amended
"complaint alleges that the conduct of the defendants caused
anxiety, emotional distress, and pain and suffering."  (Pls. Br.,
at 3.)  As such, the plaintiffs argue that they have asserted an
intentional infliction of emotional distress claim "for which the
individual can be liable and the spouse entitled to <u>per quod</u>
damages."[15]  (<u>Id.</u>)

A claim for loss of consortium arises from the marital
relationship and is based on the loss of a spouse's services and
companionship resulting from an injury.  <u>See</u> <u>Kibble v. Weeks
Dredging & Constr. Co.</u>, 735 A.2d 1142, 1149 (N.J. 1999)
(explaining that "loss of consortium, or <u>per quod</u>, claim is
intended to compensate a person for the loss of a spouse's
'society, companionship and services due to the fault of
another'").  A loss of consortium claim is a derivative claim,
"depend[ing] upon the existence of <u>tortious conduct</u> on the part
of the defendants."  <u>Horvath</u>, 102 F.Supp.2d at 236 (emphasis
added); <u>see</u> <u>Murray v. Com. Union Ins. Co.</u>, 782 F.2d 432, 438 (3d
Cir. 1986) (stating wife's right to recover in tort is derivative
to that of her husband).

A claimant's right to recover under an employment
discrimination statute does not support a loss of consortium

_____

[15] The defendants did not respond to the plaintiffs'
assertion that they alleged a viable claim of intentional
infliction of emotional distress in the amended complaint.

claim by the claimant's spouse.  See Moss v. Stinnes Corp., 160 F.3d 784, 785 (2d Cir. 1999) (concluding ADEA does not provide for loss of consortium claim by spouse); Danas v. Chapman Ford Sales, 120 F.Supp.2d 478, 489 (E.D. Pa. 2000) (dismissing loss of consortium claim alleged to derive from spouse's ADEA claim); Reed v. Johnson Controls, Inc., 704 F.Supp. 170, 171-72 (E.D. Wisc. 1989) (finding wife's loss of consortium claim not available under ADEA); see also Hurley v. Atl. City Police Dep't, 174 F.3d 95, 130 (3d Cir. 1999) (predicting loss of consortium claim is not recoverable under NJLAD).  Therefore, to the extent that L. Acevedo's loss of consortium claim is ancillary to her husband's ADEA claim, her claim is not viable.

The plaintiffs claim that the Court should not dismiss L. Acevedo's loss of consortium claim because they have alleged tortious conduct by the defendants sufficient to maintain that claim.  Specifically, the plaintiffs contend that they have set forth a claim for intentional infliction of emotional distress.[16]

---

[16] The plaintiffs have not explicitly categorized a claim for intentional infliction of emotional distress in the amended complaint.  However, "it is well settled that to survive a motion to dismiss, the pleading need not correctly categorize legal theories giving rise to the claims, and the court is under a duty to examine the pleadings to determine if the allegations provide for relief under any theory."  Adv. Power Sys. v. Hi-Tech Sys., 801 F.Supp. 1450, 1460 (E.D. Pa. 1992); see also Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  "[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).

To properly allege an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must claim that (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe.  Coefield v. GPU, 125 Fed.Appx. 445, 450 (3d Cir. 2005) (citing Buckley v. Trenton Sav., 544 A.2d 857, 863 (N.J. 1988)). Also, the plaintiff must allege that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and intolerable in a civilized society."  Buckley, 544 A.2d at 863.

"The limited scope of this tort tolerates many kinds of unjust, unfair and unkind conduct."  Fregara v. Jet Aviation Bus. Jets, 764 F.Supp. 940, 956 (D.N.J. 1991) (citation omitted). Indeed, except in the case of aggravated discriminatory conduct, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (applying Pennsylvania law); Griffin v. Tops Appliance City, 766 A.2d 292, 297 (N.J. App. Div. 2001).

"The mere fact that the [d]efendants acted for an improper purpose does not give rise to an actionable claim."  Marrero v. Camden County Bd. of Soc. Servs., 164 F.Supp.2d 455, 479 (D.N.J.

2001) (citation omitted).  Moreover, "allegations of sexual harassment, discrimination, or improperly motivated discharge, cannot alone provide the basis for an intentional infliction of emotional distress claim."  Id. (citations omitted).[17]  Also, claims regarding employment decisions fail to state a claim as for intentional infliction of emotional distress as a matter of law.  Borecki v. E. Int'l Mgmt. Corp., 694 F.Supp. 47, 61 (D.N.J. 1988).

The plaintiffs allege here that Gere stated at a teachers' meeting that it was his goal to reduce the median age of the faculty at MDHS.  (Am. Compl., at ¶ 6.)  The plaintiffs also contend that G. Acevedo was terminated because of his age.  (Id. at ¶ 3.)  As a result of this conduct, G. Acevedo contends that he "has been caused humiliation, anxiety, emotional distress, as well as pain and suffering."  (Id. at ¶ 12.)

An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss.  See Rivera v. Cracker Barrel Old Country Store, No. 02-4160, 2003 WL 21077965, at *6 (D.N.J. Mar. 3, 2003) (denying motion to dismiss claim because

_____

[17] See, e.g., Ferraro v. Bell Atl. Co., 2 F.Supp.2d 577, 589 (D.N.J. 1998) (finding that plaintiff's claims of sexual harassment, discrimination, name-calling and physical intimidation did not establish a claim for intentional infliction of emotional distress); Nichols v. Acme Mkts., 712 F.Supp. 488, 495 (E.D. Pa. 1989) ("Racial discrimination alone, like sexual harassment alone, does not state a claim for intentional infliction of emotional distress.").

23

the plaintiff alleged that the defendant knew of "her disability and purposefully harassed her because of her disability, thereby causing her severe emotional distress").[18]  Nonetheless, the Court, even accepting all of the allegations as true and applying the liberal pleading requirements of Rule 8, cannot "imagine a set of facts that might demonstrate 'extreme and outrageous' conduct on the part of the [d]efendant[s]" which caused G. Acevedo to suffer severe emotional distress.  Id. at *5.  Thus, the Court finds that the plaintiffs have not asserted sufficient allegations to support a viable cause of action for intentional infliction of emotional distress.  Moreover, because the plaintiffs have not alleged a cognizable tort claim, L. Acevedo cannot maintain her derivative loss of consortium claim.  Accordingly, the Court will dismiss Count II of the amended complaint.

## CONCLUSION

The Court, for the reasons discussed herein, finds that G. Acevedo has alleged a prima facie case of age discrimination

---

[18] See also Calkins v. Dollarland, Inc., 117 F.Supp.2d 421, 432 (D.N.J. 2000) (denying motion to dismiss intentional infliction of emotional distress claim where the plaintiff alleged defendants (1) engaged in continuous pattern of sexual harassment, (2) retaliated against her, and (3) denied her advancement within the company); Bishop v. Okidata, Inc., 864 F.Supp. 416, 427 (D.N.J. 1994) (denying motion to dismiss intentional infliction of emotional distress claim where the plaintiff contended that her supervisors (1) forced her to return to work two weeks after cancer surgery, (2) refused to give her time for chemotherapy, (3) excluded her from corporate opportunities, and (4) made negative comments about her cancer at performance evaluations over a period of several years).

under the ADEA against MDHS.  However, the Court also finds that he (1) has failed to assert a proper claim of intentional infliction of emotional distress against Gere or MDHS, and (2) cannot assert an ADEA claim against Gere in Gere's individual or official capacity.  Furthermore, the Court finds that L. Acevedo does not have a viable claim for loss of consortium. Accordingly, the Court will (1) grant the part of the motion seeking to dismiss (a) L. Acevedo's loss of consortium claim, and (b) all claims against Gere in his individual and official capacity, and (2) deny the part of the motion seeking to dismiss G. Acevedo's ADEA claim against MDHS.

The Court will issue an appropriate order and judgment.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge